UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Doğukan Günaydın, | File No. 25-CV-01151 (JMB/DLM) |
| Petitioner, | |
| v. | ORDER |
| Donald J. Trump, *in his official capacity as President of the United States*; Joel Brott, *in his official capacity as the Sherburne County Sheriff*; Peter Berg, *in his official capacity as the St. Paul Field Office Director for U.S. Immigration and Customs Enforcement*; Jamie Holt, *in her official capacity as Homeland Security Investigations St. Paul Special Agent in Charge, U.S. Immigration and Customs Enforcement*; Todd Lyons, *in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of the United States Department of Homeland Security*; and Marco Rubio, *in his official capacity as Secretary of State*, | |
| Respondents. | |

---

This matter is before the Court on Petitioner Doğukan Günaydın's habeas petition. (Doc. No. 1.) Given subsequent changes in Respondents Donald J. Trump's, Joel Brott's, Peter Berg's, Jamie Holt's, Todd Lyons's, Kristi Noem's, and Marco Rubio's (together, Respondents) position, the progression of Günaydın's immigration court matter, and developments in other federal courts presented with similar issues, the Court invites the parties to submit amended pleadings as described below.

1

## BACKGROUND

Petitioner Doğukan Günaydın most recently entered the United States on an F-1 student nonimmigrant visa. (Doc. No. 16 ¶ 4.) On March 30, 2025, he filed the underlying Petition in this matter. (Doc. No. 1.) Among other things, Günaydın alleges that, on the morning of March 27, 2025, he was arrested by plainclothes Immigration and Customs Enforcement (ICE) officers and placed in an unmarked vehicle. (*Id.* ¶ 22.) He feared he had been kidnapped. (*Id.*) Günaydın further alleged that Respondents provided no reason for or charging documents related to his arrest and detention, despite his requests, for the next four days. (*See id.* ¶¶ 22–28.)

According to an exhibit attached to the Petition, as of at least March 30, 2025, Günaydın's Student and Exchange Visitor Information System (SEVIS) record showed that his student status had been terminated on the afternoon of March 27, 2025, on two statutory grounds: INA § 237(a)(1)(C)(i) (permitting deportation of persons who fail to maintain their status) "and/or" INA § 237(a)(4)(C)(i) (permitting deportation of persons "whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States"). (*See* Doc. No. 1-1.)

Respondents filed a Return to the Petition on April 4, 2025 (Return). (Doc. No. 10.) Respondents asserted that, unbeknownst to Günaydın, on March 23, 2025, the State Department issued a "Memo for ICE," in which it "approved revocation, effective immediately, of the F-1 visa" issued to Günaydın because Günaydın had been convicted of Third-Degree Driving While Impaired, a gross misdemeanor, in March 2024. (Doc. Nos.

2

11-2, 11-3.)  Respondents also explained that ICE initiated removal proceedings against Günaydın on the following allegations, which appear in a Notice to Appear dated March 27, 2025:

> You were admitted to the United States at Chicago, IL on or about January 13, 2022 as a F-1 Student nonimmigrant.
>
> You have failed to maintain your status, to wit: in 2025 the United States State Department retroactively revoked the F-1 student visa based on your criminal history.

(Doc. No. 11-5; *see also* Doc. No. 11-4.)  In their Return, Respondents do not discuss the second basis noted on Günaydın's SEVIS record for revoking his F-1 visa or otherwise address the reasonableness of the Secretary of State's "ground to believe" Günaydın's "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences for the United States."  INA § 237(a)(4)(C)(i).

Respondents filed a supplemental response on April 9, 2025, which included notable differences from the statements provided in the Return.  For instance, Respondents now assert that on March 23, 2025, the Department of State had not revoked Günaydın's F-1 visa as previously stated, but, rather, that the Department of State had revoked a B1/B2 visitor visa.  (Doc. No. 16 ¶ 9–10 (also noting that Günaydın's F-1 visa expired in 2022).)  In addition, Respondents explain that on April 4, 2025—while Günaydın was already detained—the Bureau of Consular Affairs sent Günaydın a non-descript email informing him that his B1/B2 visa was revoked.  (Doc. No. 15-1.)  On April 7, 2025, an additional charge was added in Günaydın's deportation proceedings, alleging for the first time that ICE initiated the removal proceedings pursuant to INA § 237(a)(4)(A)(ii) (permitting

3

deportation of persons who engaged in "criminal activity which endangers public safety or national security").[1]

In the midst of these evolving explanations from Respondents, Günaydın's removal proceedings have continued to unfold. On April 8, 2025, Günaydın made an initial appearance in his deportation proceedings in immigration court. He is scheduled to next appear in immigration court on April 11, 2025 for a *Joseph* hearing. (Doc. No. 16 ¶ 13; Doc. No. 16-2.) A Master Calendar hearing is scheduled for April 15, 2025. (Doc. No. 16 ¶ 14; Doc. No. 16-3.) The outcome of these proceedings could impact the relief requested in the Petition as well as the legal arguments made in the Return.

Finally, since the Petition was filed, and despite the jurisdictional arguments to the contrary in the Return, several federal courts around the country have exercised habeas jurisdiction to permit judicial review of administrative removal proceedings.

## ORDER

Given that the above developments may impact the nature of the claims asserted and relief requested in the initial Petition, and if Günaydın wishes to file an amended petition, IT IS HEREBY ORDERED THAT:

1. Petitioner Doğukan Günaydın may file an amended petition and any requests for interim relief **by or before 6:00 p.m. CT** on **April 11, 2025.**

    a. Any such amended pleading must conform to the pleading standards set forth in 28 U.S.C. §§ 2242 and 2243, including any and all

---

[1] The Court observes that this charging document acknowledges that Günaydın most recently entered the United States on an F-1 visa. (Doc. No. 16-1.) It is not clear when the B1/B2 visa was issued.

        requirements that submissions be verified and/or submitted under oath.

    b.    Any such amended pleading shall also clearly state the nature of relief requested and grounds for habeas relief in light of the changed and changing circumstances.

    c.    Any requests for interim relief must be accompanied by supporting documents and appropriate declarations.

2.    In the event that Günaydın files an amended petition and any requests for interim relief, Respondents shall file a return to the amended petition and a response to the requested interim relief **by or before 12:00 p.m. CT** on **April 14, 2025.**

3.    In the event that Günaydın does not file an amended petition by or before 6:00 p.m. CT on April 11, 2025, the Court will consider the matter fully submitted.

Dated: April 10, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court

5